Jill Ross, USA Thank you, Your Honor. Good morning. My name is Tarek Fahmy. I'm here representing the Appellant Security People, and may it please the Court. Your Honor, the Board's errors in this case was in applying the test for obviousness as if it were the way to determine the level of skill in the art. Rather than resolving the level of ordinary skill in the art, the Board instead searched for a person capable of producing the article recited in the claim from the teachings of the cited references, and deemed that that individual was the person of ordinary skill, and accordingly found the claim obvious. In effect, Your Honors, the Board examined the question not whether the invention would have been obvious to the person of ordinary skill, but whether it would have been so to somebody standing in the shoes of the inventor. Well, even if we agree with you with respect to the error of the Board, how is it clear to us that that really affected or had anything largely to do with the analysis and conclusions of the Board? Your Honor, the answer to that question is in the Board's decision itself at page 22. The Board says there is no persuasive evidence that an installation... I'm sorry, where were you reading? I'm sorry. This is just below the middle of the page. The paragraph begins, based on the evidence. Sure. Thank you. There is no persuasive evidence that an installation technician or a manager of a health club, having all the teachings of the references before him or her, would have had the skills to produce the structure defined by the claim. That was the patent owner's point in the case, that the person of ordinary skill could not have found or arrived at the subject matter recited in the claim, that the person would not have found the claim obvious. I guess, as I understand, what the Board did was there were two proposed hypothetical skilled artisans from the two sides. One was somebody that's an engineer familiar with electromechanical locks with a certain amount of experience. And then your side proposed a manager of a health club gym. A technician as well. And then ultimately, between those two choices, the Board picked the engineer as the skilled artisan. That's right. And then went ahead and said, okay, the health club manager or technician wouldn't have been able to make this invention. Correct. But if we agree with the Board that between the two choices of who should be the hypothetical skilled artisan, that the engineer with experience with electromechanical locks is the right frame of reference over the health club manager slash technician, then I think that resolves this aspect of the Board's decision that then there's no reversible error. Well, Your Honor, just because you get to the same answer doesn't mean that it excuses the manner in which the Board got there. Because the selection of the person of ordinary skill also pervaded the rest of their opinion. It affected the very art that they considered. Right. But what is wrong with preferring an engineer who has experience with electromechanical locks over the health club manager as being the hypothetical one of ordinary skill in this art? Well, it becomes a question of substantial evidence at that point, Your Honor. Your Honor, I agree the Board can make a decision about which weight of the evidence it finds to be more persuasive. Counsel, this is a very unusual argument on the level of ordinary skill. This is not nuclear physics. I probably have skills closer to the locker room attendance in this field. But you've got this basic reference, Ogasawara, regarding describing a lock, and you've got two other references regarding adding electronics. Why are we arguing so much about the level of skill? Why don't we just look at the references? Well, Your Honor, this is an obviousness case. So level of skill is the issue. It is the prerequisite. In fact, we're not even supposed to construe claims until we understand who the person of ordinary skill is because you construe the claims from that person's standpoint. So it is the question that has to be answered. Now, if this were anticipation, I agree with you. We go to the references. Did they teach what's claimed? The inquiry is done. But we can't just get over the idea of, you know, yes, it's not nuclear physics, and, Judge Lurie, your educational background, I suggest, is far more than that of the managers. Well, is there a dispute that affected the result in terms of what the various pieces of prior art taught? I don't think there's a dispute as to the teachings of the references. So isn't that where, in theory, what the level of skill in the art could affect the analysis? And here, whether you're right or wrong, I guess I think this is the point Judge Lurie is making. If you look at these references, there's nothing in the analysis that suggests anything other than reading this, that it was infected by who a person of skill in the art is. Is it your motive? Are you saying it affected the motivation aspect of this, not the reading of the reference, not what the reference is taught, but whether there was a motivation to combine? I think that's part of the analysis, Your Honor. I don't think there's a basic dispute about what the content of the references was. There is a dispute about whether the person of ordinary skill would have combined them in the manner suggested by the petitioner. But, in fact, the Board answered that question, again, page 22. Can you just give a bottom-line answer of why was it wrong for the Board to conclude that between the two competing hypothetical skilled artisans, it was wrong for them to pick an engineer with experience with electromechanical locks rather than a health club manager for an invention related to electromechanical locks? It was wrong, Your Honor, because they applied hindsight. They looked for the person that would satisfy the obviousness test and dubbed that individual the person of ordinary skill rather than doing it correctly and first determining the person of ordinary skill and asking whether that person would have found the invention obvious. That is the fundamental error that the Board committed. They approached the question in reverse. They asked, who do we need to make it obvious? And once they found that person, well, the answer presented itself, and the case was essentially over. So that is the error that we complain about. That is the error that we've addressed in our papers. So then are you conceding that if the Board was right, or if we conclude the Board was right in saying that for this type of claimed invention, this kind of technology, one of ordinary skill in this art is an engineer with experience with electromechanical locks, then you lose or you have other arguments? We have other arguments, Your Honor, and they are addressed in our papers. The first goes to the motivation issue that Chief Judge Prost addressed, and that is the question is not really whether a person of ordinary skill, whether it be the engineer or the technician, not whether that person presented with these references that the petitioner found would have found the claim obvious. It's would they have even selected those references in the first instance. This is the WBIP versus Kohler case decided by this court, and Judge Moore writing for the court tells us that the real question is whether the skilled artisan would have plucked one reference out of the sea of prior art and combined it with another to address some need present in the field. And the patent owner made the argument that Osagawa, which you raised, is really directed to an entirely different field. It's a high security safe application. And as Judge Lurie points out, that's not really what we have here. We have a lock that goes on lockers and health locks. Can I just ask you a couple questions about that? I think the other side says that you waive this argument, that Ogasawa is not relevant prior art. And the other thing is that I think there were also statements in the record where you described Ogasawa as a relevant prior art reference. Let me address that for you, Your Honor. So at page 272 of the appendix is where the patent owner commented on Ogasawa. And the first comment that was made, this is right under the heading for Ogasawa, the first comment that was made is that Ogasawa describes a high security safe. And then on the very next page, page 273, the first full paragraph, a person of ordinary skill would not have considered the art of high security safes. So there was no waiver of any argument. The argument was made explicit that Ogasawa is not something that would have been considered. And then at JA 830, where you said you conceded that the prior art that was part of the original prosecution, which included Ogasawa, was all material prior art. And therefore, it was unnecessary to submit other pieces of prior art which were cumulative in light of those material prior art. JA 830. That's the board's characterization, Your Honor. Okay, what if I read JA 830 and it says exactly what I just said it says? I'm sorry, 830 or A30? JA 830. It's discussed in the red brief. Let's go to the source material, Your Honor. Again, I'm at page 272, where the relevance of Ogasawa is stated explicitly. Your client filed this brief. These are your client's words at JA 830, lines 14 to 16. All right, this is a district court filing in the Northern District of California, San Francisco Division, where the security people declared that this was material prior art. Yes. Considered by the Patent Office? It was considered by the Patent Office. Right, so it's material. You said it. Security people said it. I don't think I've said anything that doesn't say it's material, Your Honor. Materiality is measured by the standpoint of what the examiner would consider it, not the person of ordinary skill. So, I don't know. This is starting to sound like an argument only a lawyer could love. When you say to the district court, the Northern District of California, that Ogasawa is definitely material art, it doesn't mean material art? No, it means exactly what it says, Your Honor. It means material. That's right, it does. It does? Yeah. And even if you conclude that Ogasawa would have been properly considered, Your Honor, there's still the question of the objective factors that the board apparently disregarded. The board apparently believed that the part of the claim that was directed to the electronic key reader was somehow not that which provided the manager access. The board indicates that there was, on page 28 of their opinion in the first full paragraph, there's insufficient nexus between Claim 4 and the features that led to commercial success, but that's simply not the case because the very feature that allowed for the commercial success, that allowed for the manager access and the programming, was that electronic key card reader. That was in Ms. Advocate's statement. The claim doesn't itself recite anything about the ability to reprogram the lock using the electronic key reader. Is that fair to say? It's an apparatus claim, so it doesn't recite the step of reprogramming. There's no programming element in the claim. There's no step of programming, you're right, but the element that allows for the programming is that electronic key card reader, Your Honor. Even the patent says so in column 3 beginning at line 66 through column 4 about line 10. What, it talks about the ability for a manager to reprogram the lock? It talks about the manager access, Your Honor, not programming. That's right. There's nothing in there about programming. That's correct. Yeah. Your Honors, I'm well into the rebuttal time unless there are other questions. Thank you. Good morning, Your Honors, and may it please the Court. If I could, I'd like to start with this commercial success point, and Judge Chen, I think, is exactly right. There's nothing in the claim about reprogramming, and I think it's important to understand what this reprogramming is and how Ms. Advocate explained it in her deposition. The claim, Claim 4, says you have a key reader that accepts an identification device that allows access to the lock. So you plug in your ID key, it'll open the lock. The reprogramming starts by putting in a programming key, and the lock writes data onto that key. A new manager code is written to the key. So you need a key writer in order to perform this step. Then you take the programming key, you go to the next lock, you plug it in, and it reprograms. You're not using it as an identification. You're using it to reprogram. And Judge Chen is correct. There's no discussion of any of this in the patent. There's no discussion of how you would put in the manager's code. There is a discussion saying you can delete it. It says you can do that. If a manager leaves, you can delete their code. There's nothing about how you would program the code, how you would reprogram. There's certainly nothing talking about the lock writing data onto some programming key. It's simply not there. And so the board's decision that SPI had not established a nexus between alleged commercial success and Claim 4 is certainly supported by substantial evidence. I would like to go back to the person of ordinary skill in the art. And we disagree that the board looked at this backwards. The board did not. If you look at the order, the board doesn't say, okay, we need to equate the person of ordinary skill with the inventor. What the board does, it says here are the relevant factors we need to consider. And it quotes case law saying relevant factors. And it says now we're going to work through some factors to try to figure this out. It starts by looking at the claim language and the specification. In the claim language, it notes things like a microcontroller, so that's a computer chip. The specification has similar technical discussions. It talks about optical sensors. The patent itself suggests some technical sophistication. The board notes that. The board then talks about one of the named inventors' other patents and notes that one of them is cited prior art. It says that prior art also suggests some technical sophistication, understanding of technology and engineering. It then moves on to consider testimony by SPI's corporate representative witness, Ms. Advocate, who says, when asked, what level of expertise would you need in order to build the lock if you were given the 180 patent? And she says, well, you'd need mechanical expertise and you'd need electronic expertise. The board works through all of that. And finally, in the paragraph that counsel noted where it says, on the other hand, there's no evidence that a health club manager could make this lock. What the court's saying there, there was a lot of debate in the oral argument about whether you're looking at someone who would use the lock, buy the lock, use the lock, install the lock, versus someone who could make the lock based on the written description in the 180 patent. That was the debate. And this, I understand this, is the court saying, on the one hand, petitioners provided a bunch of evidence, and we see a lot of evidence in the record. On the other hand, there's no evidence that a health club manager could take the patent, the written description, understand it, and practice the claimed invention. So the decision here is supported by substantial evidence. Certainly the contrary position is not supported by any evidence. And finally, I think the court understands the point about Argosuara. We do believe that any argument that one of skill in the art would not have considered it is waived, it's material, there are repeated statements that it's relevant prior art. But more than that, Your Honors, the 180 patent itself begins by saying, column one, one of the very first lines says, this invention relates to electronic locks, lockers, safes, cabinets, and other storage devices. It immediately then says, of course, electronic locks are known in the art. For example, electronic locks are used in hotel guest room safes. They can have temporary codes, they can have permanent codes. So the 180 patent itself suggests that Argosuara is within the same field. Certainly it's addressing the same problem, which is allowing someone to put in a temporary code through a keypad to access the lock, and then also providing some alternative means of accessing. Your Honors, unless you have questions, I'd be happy to cede the rest of my time. Thank you. Your Honors, there was no debate about whether the teachings of the patent would allow the technician to produce the invention. In fact, the Board says that there's no persuasive evidence that the technician or the health club manager, having the teachings of the references before him or her, would have had the skills to produce the structure defined by the claim. That was the question the Board was investigating. And letting the test for obviousness, which that goes to, define the inquiry into the level of skill, is always going to produce whatever level of skill is necessary to find the claim obvious. It's simply applied hindsight. And when defining the level of skill, we do not proceed in that reverse fashion. We proceed prospectively. As to the factors that were considered, we indicate in our papers that yes, sometimes this court has said education of the inventor is an appropriate thing to look at. But that's not what the Board looked at. The Board looked at the skill of the inventor, again on page 22 of their opinion, Exhibit 1010, one of the primary inventor's other patents, relied upon by Petitioner, demonstrates a knowledge of electrical and mechanical engineering principles. This suggests a level of skill that involves intimate familiarity with technology and engineering. They were commenting on the inventor's level of skill, and that's not appropriate. Your Honor, as to the objective criteria, the nexus was shown. The very feature that allows for the manager access, the reprogramming, is recited in the claim, and the Board simply missed that. So for those reasons, we ask that this Court reverse and direct the claim to be restated. Thank you. Thank you. Both sides, the case is submitted.